UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAULA MOOREHEAD,<br>Plaintiff,<br>v.<br>MICHAEL CHERTOFF,<br>Defendant. | CASE NO. C05-1767JLR<br>ORDER |

## I. INTRODUCTION

This matter comes before the court on a motion to dismiss or, in the alternative, for summary judgment from Defendant Michael Chertoff, Secretary of the United States Department of Homeland Security ("the Government") (Dkt. # 18). The court has considered the papers filed in connection with the motion and finds the matter appropriate for disposition without oral argument. For the reasons stated below, the court DENIES in part and GRANTS in part the Government's motion.

## II. BACKGROUND

In October 2002, Plaintiff Paula Moorehead began working for the Transportation Security Administration ("TSA")[1] as a baggage screener ("Screener") at SeaTac International Airport. TSA hired Ms. Moorehead as part of the effort to federalize airport security in the wake of September 11, 2001. Ron Danielson and Kevin Palmer directly supervised Ms. Moorehead and her teammates at the Northwest Airlines security check-point as well as another team of Screeners for Southwest Airlines. Ms. Moorehead's team consisted of seven men and one other woman besides Ms. Moorehead. By January 2003, TSA had not yet hired for the position of "Lead Screener" to guide each team. As a result, Mr. Danielson and Mr. Palmer began appointing individual members of the teams to fulfill the duties of Lead Screener. The Screeners did not receive additional pay for assuming greater responsibility.

For roughly the first two weeks of January 2003, Ms. Moorehead's teammate James Arealvo served as Lead Screener when, to the best of Mr. Danielson's recollection, Mr. Arealvo voluntarily relinquished the post. Montoya Decl., Ex. 9 (Danielson Dep) at 11.[2] By Ms. Moorehead's account, Mr. Palmer and Mr. Danielson first asked her co-

---

[1]TSA is an arm of the Department of Homeland Security.

[2]The purported deposition transcripts attached as exhibits to the declaration of John Montoya, Ms. Moorehead's counsel, present serious admissibility concerns. Mr. Montoya has omitted the transcript cover pages that would identify the name of the deponent and failed to include a court reporter's certification for any of the transcripts. See Orr v. Bank of America, NT & SA, 285 F.3d 764, 774 (9th Cir. 2002) (reasoning that district court could exclude excerpt of deposition transcript for failure to include the court reporter's certification and the cover page identifying deponent). Fortunately for Ms. Moorehead, the Government did not object to the admissibility of the exhibits, and thus, the court considers the evidence and assumes that the individuals Ms. Moorehead identifies in her brief are indeed the phantom speakers in the transcript excerpts. See FDIC v. New Hampshire Ins. Co., 953 F.2d 478, 485 (9th Cir. 1991) (holding that party that fails to object to defects in evidence submitted in opposition to summary judgment motion, waives the objection).

worker, Lambert Lactoen, to serve as Lead, but he declined. Moorehead Decl. ¶ 16. Ms. Moorehead's supervisors then asked her if she wished to serve as Lead, and she accepted. In their search to fill the position, Mr. Danielson contends that he and Mr. Palmer did not have any formal criteria; they simply chose Ms. Moorehead because she had shown an interest and had a good track record. Danielson Decl. ¶¶ 4, 6.

Ms. Moorehead accepted the position in mid-January 2003 with the impression that, if she successfully performed as Lead Screener for 90 days, her supervisors would recommend her for the job on a permanent basis. Mittet Decl., Ex. A (Moorehead Dep.) at 21. Notably, Mr. Danielson said nothing to Ms. Moorehead to indicate that the position had a particular end-point. Danielson Dep. at 13. Nevertheless, after Ms. Moorehead had served in the position for two months, Mr. Danielson told Ms. Moorehead that he was going to begin rotating the Lead duties on a weekly basis. Then, on March 27, 2003, Mr. Danielson reassigned the Lead duties to Mr. Lactaoen, who this time accepted the position. Mr. Lactaoen served as Lead for an uninterrupted period of roughly four months when, according to Ms. Moorehead, he left the position due to an on-the-job injury. Moorehead Decl. ¶ 17.

Ms. Moorehead filed suit alleging sex discrimination under 42 U.S.C. § 2000e-2(a)(1) ("Title VII"), as well as violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206. The Government now moves to dismiss Ms. Moorehead's EPA claim for lack of subject matter jurisdiction and to dismiss Ms. Moorehead's Title VII claim for failure to exhaust administrative remedies. In the alternative, the Government moves for summary judgment on both claims.

## III. ANALYSIS

### A. Equal Pay Act Claim

The Government contends that Ms. Moorehead cannot maintain her EPA claim in this court because her request for relief exceeds the $10,000 jurisdictional threshold contained in 28 U.S.C. § 1346(a)(2). The Government therefore requests the court to dismiss her claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure,[3] or in the alternative, to transfer her claim to the United States Court of Federal Claims.

Congress did not include a separate jurisdictional grant when it enacted the EPA; therefore, the court determines whether it has power to adjudicate Ms. Moorehead's claim under the general jurisdictional provision of 28 U.S.C. § 1346, referred to as the "Little Tucker Act." See Schrader v. Tomlinson, 311 F. Supp.2d 21, 25 (D.D.C. 2004); cf. Marceau v. Blackfeet Housing Auth., 455 F.3d 974, 986 (9th Cir. 2006) (discussing Little Tucker Act jurisdiction generally). Under this provision, district courts have concurrent jurisdiction with the Court of Federal Claims over any non-tort "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress." 28 U.S.C. § 1346(a)(2). By contrast, under 28 U.S.C. § 1491 ("the Tucker Act"), the Court of Federal Claims has the power to adjudicate such claims without regard to the amount of relief sought. Accordingly, courts faced with EPA claims against the United States or its officers in excess of $10,000, have held that jurisdiction lies exclusively with the Federal Court of Claims. See, e.g., Barnes

---

[3] A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial" or "factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Where a defendant asserts a facial challenge, as here, the court accepts the factual allegations in the complaint as true and the non-moving party is entitled to have those facts construed in the light most favorable to her. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).

v. Levitt, 118 F.3d 404, 410 (5th Cir. 1997); Schrader 311 F. Supp.2d at 25; Huddleston v. Donovan, 524 F. Supp. 179, 182 (N.D. Ill. 1981).

The court concludes that it lacks subject matter jurisdiction over Ms. Moorehead's EPA claim. Ms. Moorehead has not plead a sum certain; however, she concedes that the relief she seeks – including back-pay, liquidated damages, and attorneys' fees – likely exceeds $10,000. Compl. at 5-6; Resp. at 16, n.3. Ms. Moorehead nevertheless urges the court to assume jurisdiction because the Ninth Circuit has yet to consider the precise jurisdictional question before the court. The court declines to do so where the plain language of 28 U.S.C. § 1346 dictates the opposite conclusion. Moreover, Ms. Moorehead does not cite nor is the court aware of any authority that runs contrary to the rationale outlined in the cases involving EPA claims cited above. Accordingly, in order to cure the want of jurisdiction and in the interest of justice, the court grants the Government's motion to transfer Ms. Moorehead's EPA claim to the Court of Federal Claims. See 28 U.S.C. § 1631.

**B. Title VII Claim**

Ms. Moorehead claims that the Government discriminated against her on the basis of her sex when it reassigned the Lead position to one of her male teammates. At the outset, the Government contends that the court must dismiss Ms. Moorehead's Title VII claim for failure to exhaust administrative her remedies. See Boyd v. United States Postal Service, 752 F.2d 410, 415 (9th Cir. 1985) (holding that employee had to exhaust administrative remedies applicable to federal employees under Title VII prior to filing suit). Specifically, the Government contends that Ms. Moorehead failed to initiate contact with an Equal Employment Opportunity Counselor within forty-five days of the alleged discriminatory conduct that occurred on March 27, 2003. See 29 C.F.R. § 1614.105(a)(1). In her response, Ms. Moorehead provides evidence that she contacted

the Government's Office of Civil Rights on April 14, 2003 – well within the forty-five day period. Moorehead Dep. at 37, Ex. 2. The Government does not provide evidence to the contrary and appears to have abandoned this argument in its reply. Accordingly, the court denies the Government's motion to dismiss Ms. Moorehead's Title VII claim on grounds that she failed to exhaust her administrative remedies. The court now turns to the merits of Ms. Moorehead's claim.

**1. Ms. Moorehead's Prima Facie Case**

To establish a prima facie case of disparate treatment under Title VII, Ms. Moorehead must provide evidence that "give[s] rise to an inference of unlawful discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Following the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Ms. Moorehead must show that (1) she belongs to a protected class, (2) she performed according to the Government's legitimate expectations, (3) she suffered an adverse employment action, and (4) the Government treated similarly situated men more favorably. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998). At the summary judgment stage,[4] the "requisite degree of proof necessary to establish a prima facie case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence." Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002)

---

[4]Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). In considering the motion, the court draws all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

(quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)). Here, the parties do not dispute that Ms. Moorehead belongs to a protected class, and although the Government refers to various alleged performance issues, it does not contest that Ms. Moorehead performed according to the Government's expectations. Mot. at 18.

As to the third element, the Government contends that the reassignment of Lead duties to another teammate does not constitute an adverse employment action because Ms. Moorehead assumed the Lead position voluntarily, received no additional pay or benefits, and did not have to apply or compete for the position. The court disagrees that such factors are determinative. In the Ninth Circuit, a "wide array of disadvantageous changes in the workplace constitute adverse employment actions." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). Here, there is no dispute that the Lead Screener position provided enhanced on-the-job experience and responsibilities. Further, Ms. Moorehead provides evidence that time served as Lead may qualify Screeners for an internal promotion. Montoya Decl., Ex. 13 at 4. On Ms. Moorehead's evidence, a reasonable jury could conclude that the reassignment constituted a materially adverse employment action because it took away her leadership role and made her a less attractive candidate for promotion. Cf. Ray, 217 F.3d at 1241 (reasoning that a transfer to another job of the same pay and status may constitute an adverse employment action) (citing St. John v. Employment Dev. Dept., 642 F.2d 273, 274 (9th Cir. 1981)); see also Burlington Northern & Santa Fe Ry. Co. v. White, -- U.S. --, 126 S.Ct. 2405, 2416-17 (2006) (holding that jury question existed as to whether reassignment from forklift duty to standard track laborer tasks, although within the same general job description, constituted a materially adverse employment action).

As to the remaining element of Ms. Moorehead's prima facie case, the court is persuaded that a reasonable jury could conclude that Mr. Danielson treated male

Screeners more favorably than Ms. Moorehead. Although it is undisputed that Ms. Moorehead's supervisors offered her the Lead position over some of her male teammates,[5] Ms. Moorehead puts forth evidence that Mr. Danielson did not adopt the "rotation" policy with respect to Ms. Moorehead's male counterparts. That is, according to Ms. Moorehead, when Mr. Lactoean assumed the Lead role, he did not lose it until he suffered an injury. Moorehead Decl. ¶ 17. There is no evidence before the court that any female Screener other than Ms. Moorehead assumed the Lead position during this time. A trier of fact could conclude that the Government gave male Screeners the opportunity to assume the Lead position indefinitely (or, at least, until some external event ended the term), while it imposed limitations on Ms. Moorehead's turn in the Lead Screener position.

Taking into consideration the minimal amount of proof required at this stage of the burden-shifting paradigm, the court concludes that Ms. Moorehead has established each element of her prima facie case. See Godwin, 150 F.3d at 1220 (reasoning that the amount of proof required to establish a prima facie case is "minimal").

**2. The Government's Legitimate, Non-Discriminatory Reason**

Having determined that a prima facie case of discrimination exists, the burden of production shifts to the Government to articulate a legitimate, non-discriminatory reason for its decision. McDonnell Douglas, 411 U.S. at 802. If the Government meets this

---

[5] The Government does not argue that the same-actor inference applies in this case. See Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996) (holding that "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action."). In any event, Ms. Moorehead notes that this inference should not apply because Mr. Danielson alone made the reassignment decision, whereas he and Mr. Palmer jointly acted in appointing her as Lead.

burden, the presumption of unlawful discrimination "drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Here, Mr. Danielson attests that he was dissatisfied with Ms. Moorehead's performance and wanted to give other Screeners the opportunity to serve as Lead. Daneilson Decl. ¶ 7. In particular, he contends that he observed Ms. Moorehead deeply engrossed in "puzzles" while on the job. Id. He also contends that Ms. Moorehead had difficulty monitoring the whereabouts of her team. Id. According to Mr. Danielson, his decision to reassign the Lead position to Mr. Lactoen centered on Mr. Lactoen's years of government experience. Daneilson Decl. ¶¶ 8, 10. None of these reasons appear to be based on sex, and as a result, constitute legitimate, non-discriminatory reasons for Ms. Moorehead's reassignment.[6]

**3. Pretext for Discrimination**

At this step of the McDonnell Douglas analysis, Ms. Moorehead must produce sufficient evidence to raise a genuine issue of material fact as to whether the Government's proffered nondiscriminatory reason is merely a pretext for discrimination. Burdine, 450 U.S. at 256. Ms. Moorehead may show pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Godwin, 150 F.3d at 1220-22. Relying on circumstantial evidence to show pretext requires Ms. Moorehead to "put forward specific and substantial evidence challenging the credibility of the employer's motive." Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir.

---

[6]The court notes that the Government's burden of production to produce a legitimate, non-discriminatory reason "can involve no credibility assessment." St. Mary's, 509 U.S. at 509.

2003). Pretext may exist where an employer provides shifting and conflicting justifications for adverse treatment; it does not exist where an employer simply provides additional reasons for its actions that are not inconsistent. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) (citations omitted).

Here, Ms. Moorehead has provided sufficient evidence from which a jury could conclude that Mr. Danielson's reasons for reassigning the Lead duties to a male Screener were mere pretext. For example, while Mr. Danielson attests that he replaced Ms. Moorehead, in part, for doing puzzles at work, he also states in his deposition that indeed "most" of the Leads and Screeners worked on such games without consequence. Danielson Dep. at 17-18. Ms. Moorehead also provides evidence that the so-called "rotation policy" started and ended during her tenure as Lead. Moorehead Decl. ¶ 18. Although Mr. Danielson contends that rotating duties within baggage security was common, he admits that he came up with the rotation of the Lead position on his own and not based on any TSA policy. Danileson Dep. at 29. A jury could conclude from this evidence that Mr. Danielson devised the policy and applied it inconsistently as a pretext for removing Ms. Moorehead from Lead.

To be sure, the court considers the question of pretext a close one. Still, because the question goes to the authenticity of Mr. Danielson's motives, it is for the trier of fact to decide which story to believe. See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1124 (9th Cir. 2004). Summary judgment is therefore inappropriate on Ms. Moorehead's Title VII claim and the court denies the Government's motion.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS the Government's motion to transfer Ms. Moorehead's Equal Pay Act claim to the United States Court of Federal Claims pursuant to 28 U.S.C. § 1361, and DENIES the Government's motion for summary judgment as to Ms. Moorehead's Title VII claim (Dkt. # 18).

Dated this 5th day of March, 2007.

JAMES L. ROBART
United States District Judge