No. 07-654C
(JUDGE MILLER)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PAULA R. MOOREHEAD,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

TODD M. HUGHES
Deputy Director

DAVID S. SILVERBRAND
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3278
Fax: (202) 353-7988

Attorneys for Defendant

Of Counsel:

GILLIAN FLORY
Attorney Advisor
Transportation Security Administration

June 13, 2008

TABLE OF CONTENTS

STATEMENT OF THE ISSUES. .......... 2

STATEMENT OF THE CASE. .......... 2

I. Nature Of The Case. .......... 2

II. Statement of Facts. .......... 4

A. Background. .......... 4

B. Facts Related To Ms. Moorehead's EPA Claim. .......... 6

SUMMARY OF ARGUMENT. .......... 8

ARGUMENT. .......... 9

I. The Standard of Review For Summary Judgment. .......... 9

II. The Standard Of Review For The Equal Pay Act .......... 10

III. Ms. Moorehead Cannot Establish A Prima Facie Case. .......... 11

IV. Assuming That Ms. Moorehead Has Established A Prima Facie Case, The Pay Differential Was Not Based Upon Gender. .......... 15

CONCLUSION. .......... 19

# TABLE OF AUTHORITIES

## CASES

Aldrich v. Randolph C. School District,
963 F.2d 520 (2nd Cir.1992). .......... 15

Behm v. United States,
68 Fed. Cl. 395 (2005). .......... 11, 16

Celotex Corp. v. Catrett,
477 U.S. 317 (1986). .......... 9

Corning Glass Works v. Brennan,
417 U.S. 188 (1974). .......... passim

Covington v. Southern Ill. University,
816 F.2d 317 (7th Cir. 1987), cert. denied, 484 U.S. 848, 108 S. Ct. 146 (1987). .......... 17

EEOC v. J.C. Penney Co.,
843 F.2d 249 (6th Cir. 1988). .......... 16

Epstein v. Sec'y, United States Department of Treasury,
739 F.2d 274 (7th Cir.1984). .......... 11, 12

Fallon v. State of Ill.,
882 F.2d 1206 (7th Cir. 1989). .......... 17

Glenn v. General Motors Corp.,
841 F.2d 1567 (11th Cir.), cert. denied, 488 U.S. 948 (1988). .......... 15, 16

Harper/Nielsen-Dillingham, Builders, Inc. v. United States,
81 Fed. Cl. 667 (2008). .......... 9

Hutchins v. International Brotherhood of Teamsters,
177 F.3d 1076 (8th Cir. 1999). .......... 17

Innogenetics, N.V. v. Abbott Laboratories,
512 F.3d 1363 (Fed. Cir. 2008). .......... 9

Irby v. Bittick,
44 F.3d 949 (11th Cir. 1995). .......... 17

Kouba v. Allstate Insurance Co.,
691 F.2d 873 (9th Cir. 1982). .......... 16, 17

Lissak v. United States,
49 Fed. Cl. 281 (2001). .......... 10, 14, 15

Long Island Sav. Bank v. United States,
503 F.3d 1234 (Fed. Cir. 2007)) (additional citations omitted. .......... 9

Mansfield v. United States,
71 Fed. Cl. 687 (2006). .......... 11

Moorehead v. United States,
81 Fed. Cl. 353 (2008). .......... 3

Pouncy v. Prudential Insurance Co.,
668 F.2d 795 (5th Cir. 1982). .......... 17

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987). .......... 9

Taylor v. White,
321 F.3d 710 (8th Cir. 2003). .......... 17

Timmer v. Michigan Department of Commerce,
104 F.3d 833 (6th Cir. 1997). .......... 18

Wollenburg v. Comtech Mftg. Co.,
201 F.3d 973 (7th Cir. 2000). .......... 15

## STATUTES

Pub. L. No. 107-71, 115 Stat. 597 (Nov. 19, 2001). .......... 4

28 U.S.C. § 1361 .......... 2, 3

28 U.S.C. § 1500 .......... 3

29 U.S.C. §§ 201, 203(e)(2). .......... 10

29 U.S.C. § 206(d). .......... passim

29 U.S.C. § 216(b). .......... 2

## REGULATIONS

29 C.F.R. § 1620.13(e)........................................................................................................ 11

29 C.F.R. § 1620.15(a)........................................................................................................ 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PAULA R. MOOREHEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-654C |
| | ) | (Judge Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court grant summary judgment for defendant upon the grounds that there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law.

Plaintiff, Paula R. Moorehead, cannot demonstrate a prima facie case under the Equal Pay Act, 29 U.S.C. § 206(d), that she was paid less than her male coworkers. Furthermore, assuming that Ms. Moorehead could meet her burden to establish a prima facie violation of the Equal Protection Act, the Transportation Security Administration ("TSA") possessed a legitimate factor other than gender (crediting prior relevant experience) for the starting salary differentials. Ms. Moorehead cannot demonstrate that the TSA considered her gender in establishing her salary and, therefore, we respectfully request that the Court grant summary judgment in favor of the United States. In support of our motion, we rely upon the pleadings, the attached exhibits, and the following brief.

## STATEMENT OF THE ISSUES

1. Whether Ms. Moorehead can establish a prima facie case of pay differential pursuant to the Equal Pay Act.

2. Assuming Ms. Moorehead can establish a prima facie case, whether the evidence demonstrates that the starting salary differentials were based on a "factor other than sex."

## STATEMENT OF THE CASE

### I. Nature Of The Case

Ms. Moorehead brings this action pursuant to the Equal Pay Act. She originally filed this action in the United States District Court for the Western District of Washington. Count I of the original complaint alleged an Equal Pay Act violation and requested "damages in an amount of the difference between the salary received by Plaintiff since the start of her employment with Defendant and the salary received by male employees paid at a higher rate than Plaintiff for equal work within the meaning of the Equal Pay Act, together with an additional equal amount as liquidated damages as specifically authorized by 29 U.S.C. § 216(b) and 29 U.S.C. § 206(d)(3) of the Act." Exh. A.

On March 5, 2007, the district court granted the Government's motion to transfer Ms. Moorehead's Equal Pay Act claim to this Court. At the same time, the district court denied the Government's motion for summary judgment on count II of the original complaint, a Title VII claim. Exh. B. That claim was subsequently tried to a jury, which rendered a unanimous verdict in favor of the United States on all Title VII claims. Exh. C.

Subsequently, pursuant to our motion, "[t]he record in the case [was] transferred to this court from the United States District Court for the Western District of Washington pursuant to 28

U.S.C. § 1361 in accordance with the district court's orders of March 5, 2007 and June 4, 2007. The transferred record was received and filed in this court on September 10, 2007. The Clerk noted on the docket at that time that the 'transfer complaint' was due to be filed in this court by October 9, 2007." November 8, 2007 Order of the Court.

On November 5, 2007, plaintiff filed a "Motion for a Change of the Attorney of Record and Motion for Enlargement of Time Out of Time and Motion for Filing of the Amended Complaint." Id. On November 8, the Court granted plaintiff's motion and accepted plaintiff's amended complaint for filing. In count I of her amended complaint, Ms. Moorehead alleges that, while employed as a transportation security screener ("screener") by the TSA, the TSA paid higher salaries to male screeners performing the same duties she performed. Am. Compl. ¶ 4. In count II of her amended complaint Ms. Moorehead alleged that while assigned to perform the duties of lead transportation security screener ("lead screener") by the TSA, the TSA paid male lead screeners higher salaries. Id. at ¶ 6.

On April 1, 2008, upon Government's motion, the Court dismissed count II of Ms. Moorehead's amended complaint "because Count II here and Ms. Moorehead's district court complaint both arise from the same operative facts; and because Count II here and Ms. Moorehead's district court complaint both seek the same relief, 28 U.S.C. § 1500 divests this court of jurisdiction to hear and decide Count II." Moorehead v. United States, 81 Fed. Cl. 353, 357-58 (2008).

## II. Statement of Facts

### A. Background

Following the terrorist attacks of September 11, 2001, Congress passed the Aviation and Transportation Security Act ("ATSA"), and created the TSA to protect the nation's transportation systems, including civil aviation. Pub. L. No. 107-71, 115 Stat. 597 (Nov. 19, 2001). Included within the ATSA was a Congressionally mandated deadline that the TSA hire and deploy screeners at all United States airports within one year after the date of enactment. ATSA, Pub. L. No. 107-71, Title I, § 110(c), 115 Stat. 597, 616 (codified at 49 U.S.C. § 44901 note). Accordingly, TSA became responsible for appointing, training, and deploying screeners for airport employment, instead of the private sector screeners who had, prior to September 11, 2001, been responsible for security screening at airports within the United States. See Declaration of Paul H. Sheldon ("Sheldon Decl.") at ¶ 4 (Exh. D).

In order to comply with the Congressionally mandated deadlines and to meet its goal to create a work force of screeners within a year, TSA awarded a contract to NCS Pearson, a Minneapolis-based human resources firm. Through this contract, NCS Pearson was responsible for the recruitment and hiring of a Federal security screening work force, including screeners, lead screeners, and supervisory transportation security screeners ("supervisors"). Id. at ¶ 5.

In April 2002, after learning of inconsistencies in the starting salaries NCS Pearson was offering new hires, TSA issued an Interim Human Resource Guidance on Salary Determinations for Transportation Security Screeners, SV-0019-Pay Band ("Salary Guidance"). The Salary Guidance provided that, unless an exception for specialized experience applied, new appointments were to be made at the minimum rate for the pay band established for the job category. Screeners

were paid at the D pay band, and the base salary (minimum rate) for the D band in 2002, was $23,600. A locality adjustment, which was calculated separately for various cities and other locations around the country, was added to the base salary. Sheldon Decl. at ¶¶ 6-7.

Pursuant to Salary Guidance, appointments could be made at a rate above the minimum rate of the D band when applicants had specialized experience that demonstrated that they possessed the skills and abilities to successfully perform the duties of the position. Specialized experience had to be in or related to the work of the position to be filled. The rationale for this exception was that applicants with specialized experience would likely achieve a higher level of performance more quickly and with less cost than an applicant with no such specialized work experience. The ability to offer a higher-than-minimum starting salary to more highly qualified individuals also enhanced TSA's ability to attract and retain those with the highest qualifications to perform important security functions with reduced costs associated with training and other performance start-up costs. In addition, the one-year requirement addressed the rapidly changing nature, processes, and equipment of security screening, and the threats that screening was intended to counter. Thus, TSA considered more recent specialized experience to be of greater value to its mission. Id.

The gender of the applicant was not a factor to be considered by NCS Pearson when they made salary determinations. Any applicant could possess or demonstrate current or recent specialized experience, notwithstanding his or her gender, because NCS Pearson evaluated such experience according to the criteria in the Guidance. Id. at ¶¶ 8-11.

Personnel representatives of NCS Pearson interviewed applicants for screener positions and made starting salary determinations based upon the information and experience indicated on

each job application. Nationwide, NCS Pearson received over 2.2 million applications for employment. It identified qualified candidates using computer based tests, a structured interview, physical tests, medical tests, and information gleaned from background checks. It gave job offers only to those applicants who passed all parts of the application process. NCS Pearson's HR representative did not evaluate the prior work experience to see if the applicant rated a starting salary bump until the time of the job offers.

In less than ten months, NCS Pearson evaluated, assessed, approved, made salary determinations, made job offers, and coordinated orientation of over 60,000 screeners, lead screeners, and supervisors nationwide. The speed necessary to accomplish this extremely large task by the Congressionally-mandated deadline inevitably led to some deviation from established policies and procedures. Sheldon Decl. ¶¶ 12-13.

In 2002 at SeaTac, NCS Pearson hired 1,039 screeners, including 699 males and 340 females. IT hired 20 of the women (equaling 5.9 percent) and 50 of the men (equaling 7.1 percent) were hired at salaries that exceeded the minimum rate. Id. at ¶14.

B. Facts Related To Ms. Moorehead's EPA Claim

Before TSA hired MS. Moorehead as a screener, NCS Pearson reviewed her application package and interviewed her. The NCS Pearson representative determined, based upon his or her assessment of Ms. Moorehead's experience, what her starting salary should be. Ms. Moorehead was offered a job at the base salary level for screeners, which in 2002 was $23,600 plus a locality pay adjustment. Exh. E. Although most screeners, both male and female also started at the base salary level, as stated previously, some screeners received a slightly higher starting salary depending upon the value NCS Pearson placed upon his or her prior experience.

At SeaTac, of the 699 men who were hired, 50 received a starting salary bump, and of the 340 women who were hired, 20 received a starting salary bump.[1] The files of the screeners who received a salary bump show that the NCS Pearson representatives consistently, for both males and females, considered the following criteria in determining whether to give a salary increase: (1) screening or other similar security work experience, including the number and types of equipment certifications and the number of those pieces of equipment with which a candidate had training and/or actual work experience; (2) law enforcement experience, including police, firefighting, and correctional officer experience; (3) military experience; (4) management experience (not limited to security, law enforcement or military); and (5) degrees, perhaps limited to the bachelor's level or higher, without regard to the field of study. Finally, NCS Pearson took into account whether a candidate had qualified for the higher-paid positions of Lead Screener or Supervisor. Sheldon Dec at ¶¶ 17-18.

As to Ms. Moorehead, although her application showed that she had four months' experience as a screener and that she was certified in the use of a hand-held wand, no other factors are indicated, such as law enforcement, military service, an advanced degree, managerial experience, or a higher previous salary. Sheldon Dec at ¶ 19.

---

[1] During the district court proceedings, the files of the individuals who received salary bumps were produced in discovery. To protect the privacy interest of the individuals, they were assigned and identified by number rather than name. Pertinent parts of the files of the 22 males, previously identified by Ms. Moorehead as comparators, have been attached to the Declaration of Paul Sheldon and are also identified by number.

## SUMMARY OF ARGUMENT

Ms. Moorehead has failed to establish prima facie case under the Equal Pay Act that the TSA discriminated against her on the basis of sex by paying wages to employees at a rate less than the rate at which it pays wages to employees of the opposite sex for equal work. Although NCS Pearson hired certain screeners at higher than minimum salaries depending upon prior, specialized experience, there is no evidence that it treated females less favorably than males. Because, here, the agency demonstrably treated males and females similarly, the fact that some male employees and some female employees might have been paid more than Ms. Moorehead does not, in and of itself, establish a prima facie case of an Equal Pay Act violation.

However, even if the Court holds that Ms. Moorehead has met her burden to establish a prima facie case under the Equal Pay Act, the United States is still entitled to judgment, because the evidence overwhelmingly establishes that the starting salary differentials were based on a "factor other than sex." A defendant may rebut a prima facie case by showing that the disparity in pay is a differential based on any factor other than sex. The evidence demonstrates that the NCS Pearson representatives responsible for hiring the 1,039 screening work force at SeaTac gave salary bumps to individuals with (1) screening or other similar security work experience (perhaps depending on the number of equipment certifications the individual held); (2) prior law enforcement experience, including police, firefighting and correctional officer experience; (3) prior military experience; (4) prior managerial experience; and (5) advanced degrees. Thus, because any pay differential between Ms. Moorehead and her comparators was gender-neutral, judgment should be entered for defendant.

ARGUMENT

I. The Standard of Review For Summary Judgment

Summary judgment "must be granted when, drawing all reasonable inferences in favor of the non-movant, there is no genuine issue as to any material fact and no reasonable jury could return a verdict for the nonmovant." Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1378 (Fed. Cir. 2008); RCFC 56(c). Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). As the United States Court of Appeals for the Federal Circuit held in Sweats, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court of Federal Claims] -- that there is an absence of evidence to support the non-moving party's case." Id. (emphasis in original) (quoting Celotex, 477 U.S. at 325).

"Once the moving party has satisfied its initial burden, the burden shifts to the opposing party to establish a genuine issue of material fact, 'that is, evidence such that a reasonable [trier of fact] could return a verdict for the nonmoving party' with regard to that element of the claim." Harper/Nielsen-Dillingham, Builders, Inc. v. United States, 81 Fed. Cl. 667 (2008) (citing Long Island Sav. Bank v. United States, 503 F.3d 1234, 1243-44 (Fed. Cir. 2007)) (additional citations omitted). As discussed below, there is no dispute over the facts that could affect the outcome of this case. Accordingly, disposition of Ms. Moorehead's case through summary judgment is appropriate.

## II. The Standard Of Review For The Equal Pay Act

The Equal Pay Act was enacted in 1963 as an amendment to the Fair Labor Standards Act and was extended from private industry to the Federal Government in 1974. 29 U.S.C. §§ 201, 203(e)(2). The purpose of the Equal Pay Act was to eradicate society's traditional belief in the inferiority of women and to alleviate the consequences stemming from that belief. See Molden v. United States, 11 Cl. Ct. 604, 608 (1987).

Pursuant to the Equal Pay Act, an employer may not discriminate between employees on the basis of sex by paying different wages to employees of the opposite sex who are performing jobs that require the same level of skill, effort and responsibility, and are performed under similar working conditions, unless the differential falls into one of the statute's four exceptions:

1. a seniority system;
2. a merit system;
3. a system which measures earnings by quantity or quality of production;
4. a differential based upon any factor other than sex.

29 U.S.C. § 206(d)(1).

To establish a prima facie Equal Pay Act claim, Ms. Moorehead bears the burden of proving that she performed work similar to those of the opposite sex (that is, the "male comparators") involving equal skill, effort and responsibility; that she and her male comparators performed the work under similar conditions; and that the TSA compensated Ms. Moorehead and her male comparators differently for that work. See Lissak v. United States, 49 Fed. Cl. 281, 284 (2001) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)).

If Ms. Moorehead were to establish a prima facie case of a disparity in pay, the burden would shift to the United States to prove that the disparity can be accounted for by one of the four exceptions to the Equal Pay Act. Mansfield v. United States, 71 Fed. Cl. 687, 693 (2006) (citing Corning, 417 U.S. at 196)). However, "[i]f the factor is a mere pretext used by an employer who intended to discriminate on the basis of gender, then the affirmative defense fails." Behm v. United States, 68 Fed. Cl. 395, 400 (2005) (citations omitted). The question of pretext places, "at the least, a burden of production on plaintiffs to come forward with evidence that could disprove (or, if you will, prevent the employer from proving) the affirmative defense. At the summary judgment stage, this means evidence from which it may reasonably be inferred that the real factor behind wage differentials was not the identified 'factor other than sex.'" Id.

## III. Ms. Moorehead Cannot Establish A Prima Facie Case

Ms. Moorehead has failed to establish that TSA paid males, in general, higher wages than it paid females for substantially similar work. Ms. Moorehead bears the burden of demonstrating that her employer, the TSA, discriminated against her "on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

Application of the equal pay standard is not dependent on job classifications or titles, but rather, depends on actual job requirements and performance. 29 C.F.R. § 1620.13(e); see also Epstein v. Sec'y, United States Dep't of Treasury, 739 F.2d 274, 277 (7th Cir.1984). Even

though two jobs may have identical job descriptions, a court is not required to find a prima facie equal pay violation. Epstein, 739 F.2d at 277.

Most TSA screeners were hired at the base screener salary which was $23,600, plus a locality adjustment. As demonstrated above, Ms. Moorehead's application package was reviewed and she was interviewed by a representative of NCS Pearson. The NCS Pearson representative determined, based upon his or her assessment of Ms. Moorehead's experience, what her starting salary should be. Ms. Moorehead was offered a job at the base salary level for Screeners, which in 2002 was $23,600, plus a locality pay adjustment. Exh. E.

Although most screeners, both males and females, were also started at the base salary level, as stated previously, some screeners were given a slightly higher starting salary depending upon the value placed on his or her prior experience. Although NCS Pearson hired certain Screeners at higher than minimum salaries depending upon prior, specialized experience, there is no evidence that it treated females treated less favorably than males. Sheldon Decl. ¶¶ 12-13. Specifically, at SeaTac, of the 699 men who were hired, NCS Pearson gave 50 a starting salary bump, and of the 340 women it hired, it gave 20 a starting salary bump. The files of the screeners who received a salary bump show that the NCS Pearson representatives consistently, for both males and females, considered the following criteria in determining whether to give a salary increase: Screening or other similar security work experience, including the number and types of equipment certifications and the number of those pieces of equipment with which a candidate had training and/or actual work experience; law enforcement experience, including police, firefighting and correctional officer experience; military experience; management experience (not limited to security, law enforcement or military); and degrees, perhaps limited to the Bachelor's level or

higher, without regard to the field of study. Finally, NCS Pearson took into account whether a candidate had qualified for the higher-paid positions of Lead Screener or Supervisor. Sheldon Dec at ¶¶ 17-18.

As to Ms. Moorehead, although her application indicated that she had four months' experience as a screener and that she was certified in the use of a hand-held wand, it showed no other factors, such as law enforcement, military service, an advanced degree, managerial experience, or a higher previous salary. Sheldon Dec at ¶ 19.

At her deposition, Ms. Moorehead testified that, sometime in February of 2003, co-worker Lambert Lactaoen told her that he was earning one dollar an hour more than she was. Exh. F at 27, 41. Ms. Moorehead also alleged that, in November 2003, she read a memorandum written by Administrator James Loy which allegedly acknowledged that there were pay disparities among screeners that would not be addressed by the Agency. Contrary to Ms. Moorehead's contentions, however, Mr. Lactaoen was hired at the same salary as was Ms. Moorehead. See Exhs. E & G (Appointment Documents for Paula Moorehead and Lambert Lactaoen).

Moreover, we are unaware of any information that would indicate that Administrator James Loy issued a memorandum acknowledging that there were pay disparities among screeners that would not be addressed by the agency and Ms. Moorehead undisputedly has no contended that she possesses a copy of such a memorandum. A June 6, 2003, memorandum issued by a Richard A. Whitford discussed salary issues; however, Ms. Moorehead has since acknowledged that this refers to the same issues that she claims were discussed in the document allegedly authored by James Loy. Exh. F at pp. 34-35. The Whitford memorandum, however, does not state what Ms. Moorehead claims. This memorandum, instead, references other issues, including

a problem that existed whereby certain individuals were hired in a supervisory capacity, and when these individuals started working there were no supervisory jobs available and, as a result, they received screener salaries. See Exh. H (Whitford Memorandum). It is undisputed that Ms. Moorehead was not hired as a supervisor, nor was she hired as a lead screener. Exh. F at 6. Consequently, this memorandum is not relevant to Ms. Moorehead's Equal Pay Act claim.

Although Ms. Moorehead originally filed suit in United States district court because she incorrectly believed that her co-worker, Lambert Lactaoen, was given a higher starting salary, after receiving information during discovery showing that some males and some females were offered higher starting salaries, Ms. Moorehead identified from the group of 50 males who received higher starting salaries, 22 individuals whom she believes to be comparators.

In this case, where males and females were demonstrably treated similarly, the fact that some male employees and some female employees might have received higher pay than Ms. Moorehead does not, in and of itself, establish a prima facie case of an Equal Pay Act violation. As demonstrated above, to establish a prima facie Equal Pay Act claim, Ms. Moorehead bears the burden of demonstrating, in relevant part, that the TSA compensated Ms. Moorehead and her male comparators differently for similar work. See Lissak, 49 Fed. Cl. at 284. Ms. Mooreahead has not demonstrated a difference in compensation here.

"Congress' purpose in enacting the Equal Pay Act was to 'remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry - the fact that the wage structure of many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same'. S. Rep. No. 176, 88th Cong., 1st Sess., 1 (1963)." Corning,

417 U.S. at 195. The fundamental principle of the Equal Pay Act is that employees doing equal work should be paid equally, regardless of their gender. Here, as demonstrated, males and females were to all intents and purposes treated equally. In fact, if Ms. Moorehead can make a prima facie case on these facts, so could all of the males who were also hired at the base salary level, given that an almost equal percentage of women got a starting salary bump.

Thus, Ms. Moorehead has failed to meet her burden to demonstrate a prima facie case under the Equal Pay Act.

## IV. Assuming That Ms. Moorehead Has Established A Prima Facie Case, The Pay Differential Was Not Based Upon Gender

Assuming Ms. Moorehead has established a prima facie case, the United States is still entitled to judgment, because the evidence overwhelmingly establishes that the starting salary differentials were based on a "factor other than sex." Specifically, the pay disparities at issue are based upon factors other than sex.

Pursuant to the fourth exception of the Equal Pay Act, a defendant may rebut a prima facie case by showing that the disparity in pay is a "differential based on any . . . factor other than sex." 29 U.S.C. § 206(d)(1). "Any factor other than sex" is a general exception to application of the Equal Pay Act. Glenn v. General Motors Corp., 841 F.2d 1567, 1571 (11th Cir.), cert. denied, 488 U.S. 948 (1988); see Wollenburg v. Comtech Mftg. Co., 201 F.3d 973, 976 (7th Cir. 2000). The Federal Circuit has not addressed, nor do the Federal Circuit Courts agree on whether any factor is sufficient, or whether the factor must be a product of a legitimate business reason, although a majority of Federal courts of appeals espouse the legitimate business reason view. Lissak, 49 Fed. Cl. at 285 (citing Aldrich v. Randolph C. School District, 963 F.2d 520

(2nd Cir.1992); EEOC v. J.C. Penney Co., 843 F.2d 249 (6th Cir. 1988); Kouba v. Allstate Ins. Co., 691 F.2d 873 (9th Cir. 1982); Glenn v. Gen. Motors Corp., 841 F.2d 1567 (11th Cir. 1988)). Assuming the majority rule applies, however, as demonstrated below, the TSA based its hiring decision upon legitimate business reasons.

This Court has determined that the "rational basis" standard of review is appropriate for this analysis, in that it is enough that the factor be gender neutral on its face and used in good faith and not in a discriminatory manner. Behm v. United States, 68 Fed. Cl. 395, 399-400 (2005). "Under rational basis review, the classifications made by the plan and rules are valid unless they bear no rational relationship to the Government's objectives. . . . All that the Government must show is that the plan and rules rationally relate to a legitimate interest, under any conceivable set of facts." Id. at 402 (internal quotation marks and citations omitted). In this case, the reason for the pay differential between Ms. Moorehead and her alleged comparators was gender-neutral.

As demonstrated above, the evidence demonstrates that the NCS Pearson representatives responsible for hiring the 1,039 screening work force at SeaTac gave salary bumps to individuals with (1) screening or other similar security work experience (perhaps depending on the number of equipment certifications the individual held); (2) prior law enforcement experience, including police, firefighting and correctional officer experience; (3) prior military experience; (4) prior managerial experience; and (5) advanced degrees. See 29 C.F.R. § 1620.15(a) ("Skill includes such factors as experience, training, education, and ability."). Additionally, the NCS Pearson representatives gave starting salary bumps in some situations where the candidate had been earning considerably more in his or her previous job. Sheldon Decl.

It is settled that offering higher salaries based on the above listed factors does not violate the Equal Pay Act. See, e.g., Fallon v. State of Ill., 882 F.2d 1206, 1212 (7th Cir. 1989) ("Employers may prefer and reward experience, believing it makes a more valuable employee, for whatever reason"). Furthermore, employers are entitled to use individualized qualifications as legitimate grounds for wage differences provided that such qualifications are not gender based. Covington v. Southern Ill. Univ., 816 F.2d 317 (7th Cir. 1987) (education and experience of male professor were non-gender based reasons sufficient to justify wage disparity), cert. denied, 484 U.S. 848, 108 S. Ct. 146 (1987); Hutchins v. Int'l Brotherhood of Teamsters, 177 F.3d 1076,1081 (8th Cir. 1999) ("A differential that is based on education or experience is a factor other than sex recognized by the Equal Pay Act"); Irby v. Bittick, 44 F.3d 949, 956 (11th Cir. 1995) (stating that "[e]xperience is an acceptable factor other than sex if not used as a pretext for differentiation because of gender"); Pouncy v. Prudential Ins. Co., 668 F.2d 795, 803 (5th Cir. 1982) ("Different job levels, different skill levels, previous training, and experience: all may account for unequal salaries in an environment free of discrimination.").

It is also settled that if an employer makes a business decision to offer a higher salary based on prior experience, it is not the court's province to second-guess an employer's business judgments. Fallon v. State of Ill., 882 F.2d 1206, 1212 (7th Cir. 1989). The Court's role is limited to determining whether a policy was applied "reasonably in light of the employer's stated purpose as well as its other practices." Kouba v. Asllstate Ins. Co., 691 F.2d 873, 876 (9th Cir. 1982). Even the presence of subjectivity or informality in the structure or administration of a policy cannot, standing alone, support an inference of discrimination. Taylor v. White, 321 F.3d 710, 717 (8th Cir. 2003).

As we demonstrated, a nearly equal percentage of males and females were given starting salary bumps demonstrating that NCS Pearson's practice of giving a starting salary bump based on certain prior qualifications was applied consistently regardless of the gender of the applicant. Even if Ms. Moorehead were to contend that she should have received a starting salary bump because she had four months prior screening experience, the fact that a mistake might have been made in her case would not mean that the Equal Pay Act was violated. See Timmer v. Michigan Dep't of Commerce**,** 104 F.3d 833 (6th Cir. 1997) (a wage disparity due to a mistake is also a defense within the fourth exception to the EPA).

Furthermore, if the NCS Pearson Representative made a mistake in not crediting Ms. Moorehead's approximate four months of prior experience as a screener, the mistake was also made with male applicants. Ms. Moorehead's male co-worker, Lambert Lactaoen, also had prior screening experience and he did not get a starting salary bump. See Exhs. H, I. Accordingly, the mere fact that an applicant had a few months prior screening experience, without any other additional specialized experience, was not considered enough to merit a higher than starting salary, regardless of gender.

Finally, we are unaware of any basis upon which Ms. Moorehead could allege that that the real factor behind any wage differentials was not a "factor other than sex." Thus, Ms. Moorehead cannot establish pretext. Behm, 68 Fed. Cl. At 400.

Thus, because any pay differential between Ms. Moorehead and her comparators was gender-neutral, judgment should be entered for defendant.

**CONCLUSION**

For these reasons, we respectfully request that the Court grant defendant's motion for summary judgment.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Patricia M. McCarthy for
TODD M. HUGHES
Deputy Director

/s/ David S. Silverbrand
DAVID S. SILVERBRAND
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3278
Fax: (202) 353-7988

Of Counsel:

GILLIAN FLORY
Attorney Advisor
Transportation Security Administration

June 13, 2008

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under that on this 13th day of June, 2008 a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ DAVID S. SILVERBRAND