UNITED STATES COURT OF FEDERAL CLAIMS
WASHINGTON, D.C.

| | |
|---|---|
| Paula R. Moorehead,<br>Plaintiff | ) |
| | ) |
| v. | ) C.A. No. 07-654 C |
| | ) GWM |
| The United States,<br>Defendant | ) |
| | ) |

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

Paula R. Moorehead, (Ms. Moorehead), the plaintiff in this action files the following Proposed Findings of Uncontroverted Facts in support of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgement.

1. Ms. Moorehead began employment in the position of Transportation Security Screener, for the Transportation Security Administration, (TSA), at the Seattle-Tacoma International Airport (SeaTac), on October 9, 2002, *Affidavit of Paula Moorehead*, ¶ 1, Exhibit 1 attached hereto.[1]

2. In October 2002, Ms. Moorehead had applied and been interviewed for the position of supervisory screener, at SeaTac, *Declaration of Paula Moorehead*, ¶ 1, Exhibit 2 attached hereto.[2]

3. After completion of the interview and testing, Ms. Moorehead , at the salary determination interview, submitted her most recent two pay stubs from her current employer and was informed she could only be offered the Pay Band D minimum salary, of $23,600 per year, *MooreheadDecl.* ¶ 2, Ex. 2.

---

[1] Ms. Moorehead's Affidavit is hereinafter referenced as "Moorehead Affid. ¶ __."

[2] Ms. Moorehead's Declaration is hereinafter references as "Moorehead Decl.¶ __."

4. On the date of Ms. Moorehead' salary determination interview, Ms. Moorehead was employed as a gate screener and acting lead screener, for a private contractor, at SeaTac and had six and one-half months of experience. Ms. Moorehead's experience included x-ray equipment, trace detection, physical searches, calibration and maintenance of security equipment; and four years with the Army Reserves, *Deposition of Paula Moorhead*, pp. 7-8, 25-27, 48-49, Exhibit 3 attached hereto.[3]

5. On April 26, 2002, the Government, due to inconsistencies in pay in the hiring of Transportation Security Screeners, issued Guidance for the hiring of individuals in the position, *Defendant's Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents, Interrogatory 16 and Requests for Production of Documents No. 4 and 6*, Exhibit 4 attached hereto.[4]

6. The April 26, 2002 Guidance required hiring at the Pay Band D minimum salary, unless an individual met two criteria for specialized experience: (1) experience directly related to passenger and baggage screening functions and (2) the experience must be current or within the last year, Ex. 4 *Def. Req. No. 4, ¶ 2.*

7. The April 26, 2002 Guidance set out required procedures for determining specialized experience stating, ". . ."involves applying technical knowledge and managerial experience in screening functions. Examples of work that include screener functions are operating x-ray equipment, trace detection, physical searches, computer-aided

---

[3] Ms. Moorehead's Deposition is hereinafter reference as "MooreheadDepo, __."

[4] Defendant's Responses to Interrogatories and Requests for Production of Documents are hereinafter referenced as "Def. Interrog___" and " Def. Req__," respectively

tomography, aviation checkpoint, calibration and maintenance on security equipment, and inspections. (Creditable work experience can be found in various occupations like airline security, airline ground security (GSC), and law enforcement positions.),” *Ex. 4, Def. Req. No. 4,* ¶ 2(b).

8. The April 26, 2002 Guidance required all salary determinations to be signed by a representative from NCS Pearson, the recruiting contractor, and the Contract Officer Technical Representative of TSA; a TSA Management official was to approve salary offers above the midpoint; and all offers had to be at the minimum Pay Band D, if the applicant did not meet the creditable specialized experience, *Ex. 4, Def. Req. No. 4,* ¶ 3(a)-(b).

9. Ms. Moorehead’s salary determination tool was missing from the TSA files, *Defendant’s Responses to Plaintiff’s Second Set of Interrogatories and Request for Production of Documents, Interrogatory No. 3,* Exhibit 5 attached hereto.

10. Ms. Moorehead and all individuals hired were required to attend TSA training and be certified on TSA equipment, upon beginning employment, *Moorehead Affid.* ¶ 2-7, Ex. 1.

11. After completion of training, Ms. Moorehead was assigned to Checkpoint for three months and then to baggage, working alongside her male coworkers and performing the same duties, with no distinction being made between work assignments, responsibilities or skills based upon experience, *Moorehead Affid.*¶ 8, Ex. 1.

12. TSA produced the applications files of male employees ID number 4, 41, 166, 224, 281, 376, 383, 446, 492, 501, 502, 599, 621, 655, 806, 836, 953, 975, 1023, with Bates

number ranges 001000 to 002083, 002364 to 002585, and 003315 to 003344, *Defendant's Responses to Plaintiff's Second Set of Interrogatories and Requests for Production of Documents, Request for Production No. 1*, Ex. 5.

13. Male Employee ID No. 4, Bates number 001008, 001009-001012 and 002085-002087 , was unemployed since retirement from the U.S. Coast Guard beginning in May 2001; had no certifications; had never performed ground security, checkpoint, airport security duties, calibrating and maintenance of security equipment; and was hired at a starting salary of $28,000[5], *Application and Work Experience Interview Form, Decision Tool, and Resume, Employee No. 4,* Exhibit 6 hereto and *Def.Req.* No.6, Ex. 4.

14 Male Employee ID No. 41, Bates number 001036, 001045, and 002092-002094, was unemployed; had no experience with airport screening, calibrating and maintenance of security equipment, use of x-ray equipment for screening, trace detection, and had no certifications; and was offered a salary of $27,500, *Applicatio, Decision Tool, and Work Experience Interview Form, Employee No. 41*, Exhibit 7 attached hereto.

15. Male Employee ID No. 166, Bates number 001113, 001117 and 002120-002122, was unemployed; had no experience with airport screening, x-ray equipment, explosive detection, trace detection, bag inspection, and had no certifictions; and was offered a starting salary of $26,000, *Application and Work Experience Interview Form, Employee No. 166*, Exhibit 8 attached hereto.

---

[5] To the extent the discovery documents reflect the initial salary offer, all starting salaries referenced in this document, exclude the locality pay adjustment. Defendant's Request for Production of Document No. 6 does not state if the locality pay adjustment is included in the starting salary listed for the employee.

16. Male Employee ID No. 281, Bates number 001288, 001298, was employed as an insurance agent; had 2 months as a security screener; a current salary of $13,000, and was offered a starting salary of $25,500, *Decision Tool and Resume, Employee No.* 281, Exhibit 9 attached hereto.

17. Male Employee ID No. 376, Bates number 002406-002407 and 002410, was receiving unemployment benefits at the time of application, had no current security experience and was offered a starting salary of $25,000, *State of Washington-Employment Security Dept. Form and Decision Tool, Employee No. 376,* Exhibit 10 attached hereto.

18. Male Employee ID No. 383, Bates number 002162-002164 and *Decision Tool*, had no security experience, certification or training and was offered a starting salary of $29,500, *Application and Decision Tool*, *Employee No. 383,* Exhibit 11 attached hereto

19. Male Employee ID No. 446, Bates number 001458-001459 and *Decision Tool*, had no current security experience, training, or certifications and was discharge from the military in 1971. Employee ID No. 446 was offered a starting salary of $25,350, *Report of Transfer or Discharge Form and Decision Tool*, *Employee No. 446*, Exhibit 12 attached hereto.

20. Male Employee ID No. 492, Bates number 002197-002199 and 002444, had no security experience, training, or certifications and had never been employed at an airport. Employee ID No. 492 was offered a starting salary of $26,600, *Application and Decision Tool*, *Employee No. 492*, Exhibit 13 attached hereto.

21. Male Employee ID No. 599, Bates number 001636, 001648-001649, 002239-002241, failed the competency test; had three to four months of screening experience; was a

Personnel manager with Huntleigh, USA; and was offered a starting salary of $28,000, *TSA Competency Inventory, Work Experience Interview Form, Decision Tool, and Application for Employee No. 599,* Exhibit 14 attached hereto.

22. Male Employee ID No. 621, Bates number 001693-001694 , 001696-001698 and 002253-002255, failed the competency test for lead screener; had less than one year experience as a screener; was earning $12.00 per hour on the date of application; and was offered a starting salary of $27,750.00, *Application, Decision Tool, and Resume of Employee No. 621,* Exhibit 15 attached hereto.

23. Male Employee ID No. 806, Bates Number 001903-001904, applied at Baltimore-Washington International Airport for a screener position in May 2002 and failed the competency test. TSA policy prohibited an individual from reapplying for 6 months. On October 6, 2002, Employee ID No. 806 was hired at a starting salary of $29,619, *May 30, 2002 letter , Competency Test Results, Employee ID No. 806,* Exhibit 16 attached hereto, Ex. 2, *Def.Req. No. 6, p. 17*, Ex. 4.

24. Male Employee ID No. 836, Bates number 001936 and 002643-002645, was not currently performing screening duties at an airport; had no certifications; and had never been employed at an airport. Employee ID No. 836 was offered a starting salary of $26,000, *Application and Decision Tool, Employee ID No. 836*, Exhibit 17 attached hereto.

25. Male Employee ID No. 953, Bates number 001952-001953 and 001970 , had six months experience as a screener and was laid off from his most recent employment. Employee ID No. 953 was offered a starting salary of $25,500. *Decision Tool and*

*Undated handwritten notes and Work Experience Interview Form for Employee ID No. 953*, Exhibit 18 attached hereto.

26. Male Employee ID No. 1023, Bates number 001751, 002078 , and 002080-002081, had nine months of security experience as a security guard at the Tacoma Courthouse; had no certifications and was earning $7.75 per hour at the time of application. Employee ID No. 1023 was offered a starting salary of $29,000, *Two Work Experience Interview Forms, Decision Tool, and Undated handwritten notes for Employee ID No. 1023*, Exhibit 19 attached hereto.

27. Paul Sheldon, Policy Analyst, Office of Human Capital, for TSA, in Washington, D.C., with responsibilities for writing policies, began employment in September 2002, *Deposition of Paul Sheldon*, pp. 4-6, Exhibit 20 attached hereto.[6]

[6] The Deposition of Paul Sheldon is referenced herein as "Sheldon__."

28. Mr. Sheldon had not reviewed the files of applicants during the application process and stated he could not determine why certain evaluations were given and was certain a TSA official did an independent assessment of all salary offers above the midpoint salary range, *Sheldon*, pp. 22-27, 31-32, Ex. 20.

Respectfully Submitted,

/s/_________________________

Barbara B. Hutchinson
D.C. Bar No. 418967
7907 Powhatan Street
New Carrollton, MD. 20784
Telephone: (301) 577-3387
Facsimile: (301) 577-3764
Attorney for Plaintiff

July 14, 2008