# In the United States Court of Federal Claims

No. 07-654 C
(Filed November 18, 2008)
TO BE PUBLISHED

|  |  |  |
|---|---|---|
| PAULA R. MOOREHEAD, | ) | Equal Pay Act, 29 U.S.C. § 206(d)(1); |
|  | ) | Gender-based wage disparities; |
| Plaintiff, | ) | Plaintiff's prima facie case; Defendant's |
|  | ) | affirmative defense that pay differential |
|  | ) | was based upon factor other than |
| v. | ) | gender; Gender-neutral factor as pretext; |
|  | ) | Motion for summary judgment, Rule 56; |
|  | ) | Genuine issues of material fact |
| THE UNITED STATES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Barbara B. Hutchinson, New Carrollton, Maryland, for plaintiff.

David S. Silverbrand, Trial Attorney, Todd M. Hughes, Deputy Director, Jeanne E. Davidson, Director, Jeffrey S. Bucholtz, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Gillian Flory, Attorney Advisor, Office of Chief Counsel, Transportation Security Administration, Arlington, Virginia, of counsel.

**OPINION AND ORDER**

GEORGE W. MILLER, Judge.

This matter is before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC") (Def.'s Mot., docket entry 20), filed June 13, 2008, seeking judgment as a matter of law on Count I of plaintiff's amended complaint (Am. Complaint, docket entry 4).  On July 14, 2008, plaintiff filed a response in opposition to the motion (Pl.'s Resp., docket entry 21), to which defendant filed a reply on August 29, 2008 (Def.'s Reply, docket entry 32) along with defendant's response to plaintiff's proposed findings of uncontroverted fact (Def.'s Resp. to Findings, docket entry 31).  Plaintiff responded to defendant's proposed findings of uncontroverted fact on September 16, 2008 (Pl.'s Resp. to Findings, docket entry 35). For the reasons discussed below, defendant's motion for summary judgment on Count I is **DENIED**.

## BACKGROUND

Count II of plaintiff's amended complaint was dismissed for lack of subject-matter jurisdiction in *Moorehead v. United States*, 81 Fed. Cl. 353 (2008). The following facts relating to Count I are taken from the parties' filings. Where there are material factual disputes, the Court has so indicated.

On November 19, 2001, in response to the events of September 11, 2001, Congress passed the Aviation and Transportation Security Act ("ATSA") creating the Transportation Security Administration ("TSA") and making TSA responsible for appointing, training, and deploying screeners for airport employment. Pl.'s Resp. to Findings ¶ 1. This required TSA to hire an entire work force of screeners within a year, as mandated by Congress, to replace the private sector screeners, which had been in place in all United States airports prior to the ATSA. Pl.'s Resp. to Findings ¶¶ 1-2. A Minneapolis-based human resource firm, NCS Pearson, was awarded a contract by TSA to help with this process. Pl.'s Resp. to Findings ¶ 2. In April 2002, due to inconsistencies in the hiring salaries of TSA screeners, TSA issued an Interim Human Resource Guidance on Salary Determination for Transportation Security Screeners, SV-0019-Pay Band ("Salary Guidance"). Def.'s Resp. to Findings ¶ 5. The Salary Guidance provided that new screeners were to be paid at the minimum of Pay Band D, $23,600, unless an exception for specialized experience applied. Def.'s Resp. to Findings ¶ 6. This specialized experience was required to be current or within the prior year and directly related to passenger and baggage screening functions. Def.'s Resp. to Findings ¶ 6. The Salary Guidance provided a sample document called a "Decision Tool" to be used after an interview of an applicant. Salary Guidance at 1, 3: Exhibit D, Attachment A to Def.'s Mot. The Decision Tool included an empty table for an interviewer to populate with any applicable specialized experience and with properly documented current salary information of the interviewed candidate. Salary Guidance at 2, 3: Exhibit D, Attachment A to Def.'s Mot. In addition, the Decision Tool had a blank for a final salary offer and signature lines for a "Human Resource Representative" and a "TSA Representative," but the Salary Guidance did not appear to provide any instruction on how the Decision Tool was to be used for calculating, documenting, or making salary offers to candidates. Salary Guidance: Exhibit D, Attachment A to Def.'s Mot.

Plaintiff Paula Moorehead was hired by the TSA in October 2002. Def.'s Resp. to Findings ¶ 1. The TSA hired Ms. Moorehead as a transportation security screener to work at Seattle-Tacoma International Airport ("SeaTac"). *Id.* At some unspecified time before October 2002, Ms. Moorehead had worked as an airport security screener for another employer. Def.'s Resp. to Findings ¶ 4. When hired by the TSA, Ms. Moorehead received the Pay Band D minimum base salary of $23,600. Def.'s Resp. to Findings ¶ 3. TSA hired several male screeners at approximately the same time as Ms. Moorehead to work at SeaTac with initial salaries above the minimum Pay Band D base. Def.'s Resp. to Findings ¶¶ 13-27.

Ms. Moorehead originally filed this suit in the United States District Court for the Western District of Washington. Def.'s Mot. at 2; Pl.'s Resp. at 1. Her complaint in the district

court alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (2000), as well as violations of the Equal Pay Act of 1963, 29 U.S.C. § 206 (2000). *Id*. Pursuant to defendant's motion, the district court on March 5, 2007, transferred Ms. Moorehead's Equal Pay Act claim to this court under 28 U.S.C. § 1631 (2000). Def.'s Mot. at 2; Pl.'s Resp. at 1. The district court did not transfer Ms. Moorehead's Title VII claim to this court; that claim was subsequently tried to a jury in the district court, and a verdict was rendered in favor of defendant. *Id*. On November 8, 2007, Ms. Moorehead filed a two-count amended complaint in this court. Each count alleged a separate violation of the Equal Pay Act. Am. Compl. ¶¶ 1-8. Count II of the amended complaint alleged that Ms. Moorehead was paid less than men doing the same job when she held the position of lead transportation security screener. Ms. Moorehead's Title VII claim in district court also related to her employment as a lead transportation security screener. Thus, defendant filed a motion to dismiss Count II for lack of jurisdiction pursuant to 28 U.S.C. § 1500 (2000). On April 1, 2008, this Court granted defendant's motion to dismiss Count II for lack of subject matter jurisdiction. *Moorehead v. United States*, 81 Fed. Cl. 353 (2008). Count I alleged that Ms. Moorehead and other women working as transportation security screeners were hired at a lower starting salary than men hired for the same position in violation of the Equal Pay Act. Count I is the only claim left in this case and is the subject of defendant's motion for summary judgment.

**DISCUSSION**

I.      **Standard for Decision**

A court may grant summary judgment if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine issue exists if the evidence could support a finding for the nonmoving party. *Liberty Lobby*, 477 U.S. at 255. A fact is material if it might affect the outcome of the suit. *Id*. at 248. "Any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the nonmoving party." *M.A. DeAtley Const., Inc. v. United States*, 75 Fed. Cl. 812, 814 (2007). A court may deny summary judgment if "there is reason to believe that the better course would be to proceed to a full trial." *Liberty Lobby*, 477 U.S. at 255.

"The moving party bears the burden of demonstrating the absence of a genuine question of material fact." *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The moving party must tender to the court documentary evidence that supports its assertion that the material facts are beyond genuine dispute, unless the moving party bases its motion for summary judgment on the "absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Moreover, to demonstrate a genuine issue of material fact, the nonmoving party need not "produce evidence in a form that would be admissible at trial." *Celotex Corp.*, 477 U.S. at 324. The court must view the parties' submissions in the light most favorable to the nonmovant and resolve all doubts in the nonmovant's favor. *Liberty Lobby*, 477 U.S. at 255.

**II.     Plaintiff Has Established a Prima Facie Case For the Purposes of this Motion**

The Equal Pay Act ("EPA") was enacted in 1963 as an amendment to the Fair Labor Standards Act ("FLSA") to rectify perceived gender-based wage disparities. *See Corning Glass*, 417 U.S. at 195. The EPA was extended to apply to the Federal Government in 1974. 29 U.S.C. §§ 201, 203(e)(2). The EPA provides that:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1) (2000).

Plaintiff has the initial burden of establishing a prima facie case by demonstrating that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *Mansfield v. U.S.*, 71 Fed. Cl. 687, 692 (2006). Once the plaintiff meets this initial burden, "the statute presumes discrimination and requires defendant to proffer successfully an affirmative defense" based upon one of the statute's four exceptions. *Allison v. United States*, 39 Fed. Cl. 471, 475 (1997).

The Government spends little time arguing that there is no pay differential between female and male screeners, and the Government appears to concede that male screeners perform substantially the same duties as female screeners. Def.'s Resp. to Findings ¶ 11. Instead, the Government's main argument is that the reasons for any pay disparity are not gender based. Def.'s Mot. at 12-13. This argument, however, is not pertinent to whether plaintiff can establish a prima facie case. *Beck-Wilson v. Principi*, 441 F.3d 353, 363 (6th Cir. 2006) ("Factors like education and experience are considered as a defense to an employer's liability rather than as part of a plaintiff's prima facie case."); *Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 875 (9th Cir. 1982).

Although the parties disagree on the actual numbers, both parties state that more males than females were hired at a starting salary above the minimum provided by TSA's 2002 Salary

Guidance. Pl.'s Resp. to Findings ¶ 23. Defendant appears to argue that the percentage of men receiving salary offers above the minimum differs so little from the percentage of women receiving above-minimum salary offers as to be statistically insignificant. Def.'s Mot. at 14-15; Sheldon Decl. ¶ 15. It is unclear from the filings whether the average starting salary for men is higher than the average starting salary for women. Whether male screeners are paid more than female screeners is clearly a material fact, although from the record it is unclear whether the parties disagree. However, for purposes of defendant's summary judgment motion, this Court views the facts in the light most favorable to plaintiff and draws all reasonable inferences in favor of plaintiff. *Liberty Lobby*, 477 U.S. at 255. Therefore, the Court infers that the female screeners performed work substantially equivalent to that performed by male screeners and were paid a lower salary for such work. Thus, in the context of this motion, plaintiff has established a prima facie case that TSA violated the EPA.

### III. Genuine Issues of Material Fact Remain Concerning Defendant's Affirmative Defense that Any Pay Differential was Based Upon a Factor Other Than Gender

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show that the pay difference is justified under one of the four exceptions to the EPA enumerated in the statute. *Corning Glass Works*, 417 U.S. at 196; 29 U.S.C. § 206(d)(1). The application of an exception is an affirmative defense on which the employer has the burden of proof. *Corning Glass Works*, 417 U.S. at 196. This burden of an employer to establish an affirmative defense is "a heavy one." *Mansfield*, 71 Fed. Cl. at 693. To successfully demonstrate that the pay differential is justified under one of the four exceptions, an employer must prove that the gender-neutral factor it identifies is actually the factor causing the wage difference in question. *Stanizale v. Jargowsky*, 200 F.3d 101, 107-08 (3d Cir. 2000). A plaintiff may counter this affirmative defense by producing evidence that "the reasons the employer seeks to advance are actually a pretext for sex discrimination." *See Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 526 (2d Cir. 1992). If the reason relied upon by an employer for a pay difference is shown to be pretextual the affirmative defense fails. *See Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 876-77 (9th Cir. 1982).

The Government argues that any pay differential between the male and female screeners at issue in this case results from a set of factors used by NCS Pearson in its evaluation of candidates, and reliance upon those factors brings TSA within the fourth exception, "any other factor other than sex." Def.'s Mot. at 15. "Under exception (iv), even if a man and woman are doing the same work for different pay, there is no violation if the wage difference stems from a factor other than gender." *Lissak v. United States*, 49 Fed. Cl. 281, 284 (2001). The Government lists the following factors used by NCS Pearson to determine whether starting salaries higher than the minimum would be offered to an applicant: "(1) screening or other similar security work experience (perhaps depending on the number of equipment certifications the individual held); (2) prior law enforcement experience, including police, firefighting and correctional officer experience; (3) prior military experience; (4) prior managerial experience; (5) advanced degrees;"

and (6) "in some situations where the candidate had been earning considerably more in his or her previous job." Def.'s Mot. at 7, 16. The Government does not explain whether or how these factors were derived from TSA's 2002 Salary Guidance.

The Government states that it is settled law that offering higher salaries based on these factors does not violate the EPA. *Id.* at 17. However, the Government acknowledges that the federal courts are not in agreement, and the Court of Appeals for the Federal Circuit, has not addressed, whether such a pay difference must be a product of a "legitimate" business reason in order to qualify as an exception to the EPA or if the differential must simply be the product of a "gender neutral business justification, without examining whether the business reason is itself sound" and is used in good faith and not in a discriminatory manner. *Lissak*, 49 Fed. Cl. at 285; *Behm v. United States*, 68 Fed. Cl. 395, 399-400 (2005). The Court does not need to decide which of the two approaches should be followed here because under either approach there exist genuine issues of material fact that cannot be resolved on summary judgment.

### A. Fundamental Material Facts Remain In Dispute Concerning The Market Force Theory of Justification

In its motion, the Government states that the rationale for the exception in the Salary Guidance allowing candidates with specialized experience to be paid more than the minimum starting salary was that the ability to offer higher salaries to more qualified individuals and those individuals who had a considerably higher prior salary was necessary in order to attract and retain candidates with the highest qualifications. Def.'s Mot. at 5. However, the justifications of higher prior salary and the so-called "market force theory"—any policy based on offering salaries said to be necessary to induce the candidate to accept the employment—have been singled out by many courts (regardless of whether that particular court subscribes to the theory that the defendant's alleged business reason must be shown to be legitimate) as requiring additional scrutiny because of the tendency of these policies to simply perpetuate the trend of paying women less for the same work. *Corning Glass Works v. Brennan*, 417 U.S. 188, 205 (1974); *Taylor v. White*, 321 F.3d 710, 718-19 (8th Cir. 2003) ("These risks simply highlight the need to carefully examine the record in cases where prior salary or salary retention policies are asserted as defenses to claims of unequal pay."); *Glenn v. General Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988) ("The flaws of the *Covington* decision are that the Seventh Circuit implicitly used the market force theory to justify the pay disparity.") (citing *Covington v. Southern Illinois University*, 816 F.2d 317 (7th Cir. 1987)); *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1037 (11th Cir. 1985), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ("The argument that supply and demand dictates that women *qua* women may be paid less is exactly the kind of evil that the [Equal Pay] Act was designed to eliminate, and has been rejected."); *Brennan v. Victoria Bank & Trust* Co., 493 F.2d 896, 902 (5th Cir. 1974) (observing that market force theory that a woman will work for less than a man is not a valid consideration under the EPA).

In this case, the parties disagree on a number of fundamental facts material to determining

the causes and significance of any pay disparity including: whether Ms. Moorehead's experience was appropriately presented and considered during her hiring process, *see* Def.'s Resp. to Findings ¶ 4; Pl.'s Resp. to Findings ¶ 24; the number of women and men hired at SeaTac above the minimum starting salary, *see* Pl.'s Resp. to Findings ¶ 23; and the background experience allegedly justifying the higher starting salaries offered to 6 of the 19 males whose applications were provided by Ms. Moorehead for comparison to her own application, *see* Def.'s Resp. to Findings ¶¶ 11, 13-14, 18, 20-22.  Such material factual disputes cannot be resolved on summary judgment.

### B. Genuine Issues of Material Fact Remain Concerning Whether TSA's Reliance Upon Its Salary Guidance Was Pretextual

In addition, whether or not our Court of Appeals were to decide that any underlying reason for a pay difference must be the product of a legitimate business reason, rather than merely gender neutral, the defendant must provide evidence about its alleged underlying business purpose when there is any reasonable indication that the business reason identified by the employer is pretextual.  "An employer must prove that the gender-neutral factor it identified is indeed *the* factor causing the wage differential in question." *Behm*, 68 Fed. Cl. at 400.  The affirmative defense fails if the facially gender-neutral factor is a mere pretext used by an employer to hide sexual discrimination. *Behm*, 68 Fed. Cl. at 400.  This requires the plaintiff to show at the summary judgment stage that it may reasonably be inferred from the available evidence that the pay differential was caused by something other than the factor or factors identified by the defendant. *Behm*, 68 Fed. Cl. at 400.  Ms. Moorehead contends that one of the factors the Government cites as a business reason justifying differences in starting salaries, *i.e.*, that applicants with specialized experience would be more efficient and less costly at the start of their tenure, Def.'s Mot. at 5, was mere pretext.  Pl.'s Resp. at 8.  Ms. Moorehead argues that the Government did not actually use experience consistently as a factor since "[m]ales were awarded higher starting salaries, without having any of the required experience,"  Pl.'s Resp. at 8, "all new hires had to complete training" and "no distinction was made in the assignment of duties" regardless of the salary of the incoming employee.  Pl.'s Resp. at 9.

Admittedly, experience is often cited by the courts as a business reason that is acceptable under the EPA as a factor other than sex. *Hutchins v. Int'l Brotherhood of Teamsters*, 177 F.3d 1076, 1081 (8th Cir. 1999); *Stanley v. Univ. of Southern California*, 13 F.3d 1313, 1322 (9th Cir. 1994) ("Employers may reward professional experience and education without violating the EPA."); *Covington v. Southern Ill.* Univ., 816 F.2d 317 (7th Cir. 1987); *Pouncy v. Prudential Ins. Co.*, 668 F.2d 795, 803 (5th Cir. 1982).  However, even such a facially innocuous policy may be used as a pretext to cover discriminatory practices. *See, e.g., Beck-Wilson v. Principi*, 441 F.3d 353, 366-68 (6th Cir. 2006) (finding that a reasonable jury could conclude the employer's argument that it must continue to pay the predominantly male employees on a special Congressionally mandated pay scale was pretextual).  The parties disagree on a number of facts material to determining whether the factors identified by the Government were utilized as a pretext to hide discrimination.

7

### C.     Genuine Issues of Material Fact Remain In Dispute Concerning Whether TSA's Salary Guidance Was Actually Followed

Ms. Moorehead also appears to contend that the procedures set forth in TSA's Salary Guidance were not followed when determining her starting salary since the Government has not produced, and may never have created, a Decision Tool for Ms. Moorehead.  Neither party explains why such a Decision Tool would not have been created or what the implications are of such a failure.  *See* Def.'s Response to Findings ¶ 9.  In addition, Ms. Moorehead argues that much of the evidence proffered by the Government in support of its motion cannot be relied upon because the Government's declarant, Mr. Sheldon, was not involved in the hiring process and could not reconstruct the determinations made by NCS Pearson.  Pl.'s Resp. at 8; Pl.'s Resp. to Findings ¶ 14.  In fact, the Government has provided no evidence from any TSA employee actually involved in the hiring of Ms. Moorehead or any other screeners.  In addition, the Government has provided no evidence regarding the significance of the lack of a Decision Tool for Ms. Moorehead.  The record leaves open many questions surrounding Ms. Moorehead's hiring and the determination of her starting salary.  Because those questions rise to the level of genuine issues of material fact, defendant's motion for summary judgment must be denied.

### CONCLUSION

For the reasons set forth above, the Court concludes that there exist genuine issues of material fact that must be resolved at trial.  Defendant's motion for summary judgment is therefore **DENIED**.

The Court **ORDERS** that the parties shall file a joint status report by **Tuesday, December 2, 2008** proposing an agreed schedule of further proceedings.

**IT IS SO ORDERED.**

  s/ George W. Miller  
GEORGE W. MILLER  
Judge